**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CUPPLES INTERNATIONAL, INC., <br><br> Defendant, <br><br> THE BOARD OF REGENTS, STATE OF IOWA, on behalf of the UNIVERSITY OF IOWA, <br><br> Nominal Defendant. | Case No. 3:25-cv-00106 <br><br><br> **CUPPLES INTERNATIONAL, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM** |

Defendant, Cupples International, Inc. ("Cupples"), by its attorneys, and for its answer and affirmative defenses to the Complaint for Declaratory Judgment of Starr Indemnity & Liability Company ("Starr"), states as follows:

**NATURE OF THE ACTION**

1. This is an insurance coverage action seeking declarations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure concerning the rights and obligations of Starr under certain excess policies of insurance issued to CH Holdings USA, Inc. with respect to the Final Award issued in the arbitration captioned *The Board of Regents, State of Iowa, on behalf of the University of Iowa v. Cupples International, Inc. et al.*, Case No. 01-22-0003-9453 ("Arbitration").

**ANSWER:**   Cupples admits that this is an insurance coverage action in which Starr seeks declarations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure

concerning the rights and obligations of Starr under certain excess policies of insurance issued to CH Holdings USA, Inc. with respect to the Final Award issued in the Arbitration, but denies that Starr is entitled to its requested relief.

2. The Final Award was issued on July 3, 2025, following the hearing that took place from February 24, 2025 to March 14, 2025.

**ANSWER:** Cupples admits the allegations in paragraph 2.

3. Claimant was awarded $49,462,962 against Cupples International, Inc. ("Cupples"), as more fully set forth in the Final Award, which represents the Claimant's claimed cost to replace the windows installed on the University of Iowa Stead Family Children's Hospital ("Project").

**ANSWER:** The allegations in paragraph 3 consist of legal conclusions for which no response is required. To the extent a response is required, Cupples admits that the Claimant was awarded the sum of $49,462,962 against Cupples relating to the Project, but denies the remaining allegations.

4. Cupples was the window contractor and entered into two contracts to design and develop the glass configuration used in the windows.

**ANSWER:** Cupples admits that the Board of Regents contracted with Cupples, and that Cupples subcontracted with Knutson Construction Services Midwest, Inc. ("Knutson"), to supply and install windows, but denies the remaining allegations.

5. The Arbitration Panel found that Cupples breached the foregoing contracts and that the Board sought the appropriate remedy of the cost to replace the defective construction product.

**ANSWER:** The allegations in paragraph 5 consist of legal conclusions for which no response is required. To the extent a response is required, Cupples admits that the Arbitration

4927-8268-9936, v. 2

panel found that Cupples breached its contract with the Board of Regents and its subcontract with Knutson, but denies the remaining allegations to the extent they are inconsistent with the terms of the Final Award.

6.      Cupples now seeks indemnification of the Final Award from its general liability insurers.

**ANSWER:**   Cupples admits the allegations in paragraph 6.

7.      However, the excess insurance policies issued by Starr do not provide coverage for the costs associated with the replacement of Cupples' work and product, *i.e.*, the windows and, accordingly, Starr has disclaimed coverage and initiated this declaratory judgment proceeding.

**ANSWER:**   The allegations in paragraph 7 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples admits that Starr disclaimed coverage and initiated this proceeding, but denies the remaining allegations.

8.      An actual and justiciable controversy exists between Starr and Cupples with respect to the indemnity sought and Starr seeks a declaration that it has no indemnity obligation with respect to the Final Award under the excess insurance policies issued to Cupples.

**ANSWER:**   The allegations in paragraph 8 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples admits that a controversy exists between Starr and Cupples with respect to the indemnity coverage under the applicable Starr policies and admits that Starr seeks a declaration that it owes no indemnity coverage for the Final Award, but denies that Starr is entitled to its requested relief.

## THE PARTIES

9.      Starr is a corporation organized and existing under the laws of the State of Texas with its principal place of business in New York.

**ANSWER:** Cupples lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 9.

10. Cupples is a Missouri corporation organized and existing under the laws of the State of Missouri with its principal place of business in Missouri.

**ANSWER:** Cupples admits the allegations in paragraph 10.

11. Claimant is a board consisting of members who are duly appointed officials of the State of Iowa, with its principal place of business located at 11260 Aurora Avenue, Urbandale, Iowa.

**ANSWER:** Cupples admits, on information and belief, the allegations in paragraph 11.

12. Claimant is a nominal defendant and is joined here to the extent it is a necessary party pursuant to Rule 19(a)(1)(A)–(B) of the Federal Rules of Civil Procedure. Starr agrees to voluntarily dismiss it from the litigation in exchange for its agreement to be bound by any judgment or settlement entered in this case.

**ANSWER:** The allegations in paragraph 12 consist of legal conclusions for which no response is required. To the extent a response is required, Cupples lacks knowledge or information sufficient to form a belief about the truth of the allegations and therefore denies the allegation.

### JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the case is between citizens of different states.

**ANSWER:** The allegations in paragraph 13 consist of legal conclusions for which no response is required. To the extent a response is required, Cupples admits the allegations.

4

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because it is the district in which Claimant resides and is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**ANSWER:**    The allegations in paragraph 14 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples admits the allegations.

## ARBITRATION

15.     On June 10, 2022, the Claimant filed suit against Cupples and Knutson Construction Services Midwest, Inc. ("Knutson") in the District Court of Iowa, Johnson County ("Underlying Lawsuit").

**ANSWER:**    Cupples admits the allegations in paragraph 15.

16.     On September 19, 2022, the Underlying Lawsuit was voluntarily dismissed in favor of the Arbitration.  A true and correct copy of the Detailed Statement of Claim filed in the Arbitration is attached as Exhibit A.

**ANSWER:**    Cupples admits the allegations in paragraph 16, except Cupples denies that the Underlying Lawsuit was voluntarily dismissed on September 19, 2022.

17.     The Arbitration included claims by the Claimant against Cupples, contractor Knutson and glass supplier Cristacurva, LLC ("Cristacurva").

**ANSWER:**    Cupples admits the allegations in paragraph 17.

18.     The Arbitration concerns the construction of the Project and specifically, its curtain wall system comprised of insulated glass units ("IGUs") that the Claimant alleged were defective because they delaminated and cracked.  *Id.* at ¶¶ 10-12.

**ANSWER:**    Cupples admits that the Arbitration concerned the construction of the Project and the curtainwall system comprised of insulated glass units ("IGUs") and admits that the

Claimant's allegations included assertions that the IGUs were defective because they delaminated and cracked, but denies the allegations to the extent they are inconsistent with the allegations contained in the Detailed Statement of Claim and the full arbitration record.

19.    In the Arbitration, Claimant alleged three instances where the IGU windows broke:

On January 8, 2015, a patient window was found broken on site. On December 6, 2018, breakage of a slot window on Level 5 was found. Breakage of a spandrel window on Level 3 of the Bridge was discovered on February 11, 2019 and window breakage at Level 5 on the south side of the Connector Bridge was discovered on April 4, 2019.

**ANSWER:**    Cupples admits the Claimant asserted the allegations that appeared in the block quote in paragraph 19 in the Arbitration but otherwise denies all remaining allegations.

20.    Claimant alleged in the Arbitration that IGUs supplied by Cupples failed to comply with the requirements of the contracts, pursuant to which Defendants were required "to provide design, development, engineering, calculations, successful testing outcomes, fabrication, assembly, transportation, and installation necessary to provide a unitized curtainwall system in accordance with performance requirements." *Id.* at ¶¶ 13.

**ANSWER:**    Cupples admits the Claimant asserted the allegations partially quoted in paragraph 20 and admits that the Claimant also alleged that Cupples failed to comply with the requirements of Bid Package #7, but denies the remaining allegations.

21.    Those contracts are Bid Package #7 and Bid Package #20 that addressed the IGU work by Cupples and Knutson respectively at two separate locations on the Project.

**ANSWER:**    Cupples admits that Bid Package #7 and Bid Package #20 addressed the IGU work by Cupples and Knutson, but denies the remaining allegations.

22.    For Bid Package #20, Knutson subcontracted the bridge curtainwall and windows scope to Cupples.

**ANSWER:**    Cupples admits that Knutson subcontracted with Cupples under Bid Package #20, which Bid Package speaks for itself, but denies the remaining allegations.

23.    Cupples contracted with Cristacurva to fabricate and install the windows.

**ANSWER:**    Cupples admits that it subcontracted with Cristacurva under Bid Package #7 and Bid Package #20, which Bid Packages speak for themselves, but denies the remaining allegations.

24.    The Detailed Statement of Claim asserted a single cause of action against Cupples for Breach of Contract – Bid Package #7.

**ANSWER:**    Cupples admits the allegations in paragraph 24.

25.    On October 17, 2022, Knutson filed a cross-claim against Cupples asserting a claim for breach of contract based on the subcontract it entered into with Cupples under Bid Package #20.

**ANSWER:**    Cupples admits the allegations in paragraph 25.

26.    Cupples also asserted a crossclaim against Cristacurva for indemnity based on a provision found in the Master Purchase Agreement, which was settled prior to the hearing.

**ANSWER:**    Cupples admits only that it asserted a crossclaim against Cristacurva, but denies the remaining allegations.

27.    On January 7, 2025, also prior to the hearing, Claimant and Knutson settled its claims with Knutson, whereby, in relevant part, Knutson assigned its claims against Cupples to the Claimant in exchange for dismissal.

**ANSWER:**    Cupples admits, on information and belief, that Claimant and Knutson settled their dispute, with an assignment of claims as a part thereof, but denies the remaining allegations.

4927-8268-9936, v. 2

28.    The Arbitration proceeded to hearing on February 24, 2025, and concluded on March 14, 2025 before a panel of three arbitrators.

**ANSWER:**    Cupples admit the allegations in paragraph 28, but denies that the arbitration concluded on March 14, 2025.

## FINAL AWARD

29.    On July 3, 2025, the Panel issued its Final Award, wherein it held that "Respondent Cupples shall pay Claimant Board of Regents the total amount of $49,462,962."

**ANSWER:**    Cupples admits the allegations in paragraph 29.

30.    The Final Award characterized the "central issues [as]… whether the[] [IGUs] need to be replaced, and whether the Respondents are liable for the cost of the replacement and other costs that have been incurred by the Board for the investigation and interim repairs that took place over several years of efforts."

**ANSWER:**    Cupples admits only that the quoted language in paragraph 30 is contained in the Final Award, but denies the allegations to the extent they are inconsistent with the Final Award.

31.    The Final Award stated that the "Board seeks reimbursement for the cost of temporary mitigation efforts, cost of the full replacement of the IGUs, and the various costs associated with advancing and completing the mitigation and replacement efforts, such as architectural and construction management services.  The Board did not seek consequential damages, nor did it request attorneys' fees in any filing in this arbitration."

**ANSWER:**    Cupples admits only that the quoted language in paragraph 31 is contained in the Final Award, but denies the allegations to the extent they are inconsistent with the Final Award.

8

32.     After reviewing the evidence and testimony, the Arbitration Panel found that the IGUs for the Project "were improperly fabricated and did not comply with the specifications for the Project in that they were not free from material faults and defects. … Cupples argues that the design of the IGU panels was implicated in the failures, but as Cupples was contractually obligated both to design (as delegated designer) and to fabricate the glass pieces, the argument does not diminish the responsibility of the Respondent for the unsatisfactory performance of the IGUs and the resulting damages incurred by the Board."

**ANSWER:**   Cupples admits only that the quoted language in paragraph 32 is contained in the Final Award, but denies the allegations to the extent they are inconsistent with the Final Award and denies the remaining allegations.

33.     The Panel found "that the cause of the delamination and resulting failure lies in the misfabrication of the glass in the IGUs by Cristacurva."

**ANSWER:**   Cupples admits only that the quoted language in paragraph 33 is contained in the Final Award, but denies the allegations to the extent they are inconsistent with the Final Award.

34.     Accordingly, the Panel also found that the Claimant "has proven by a preponderance of the credible and persuasive evidence, that the windows designed, fabricated, and installed by Cupples or those for whom it is responsible, have failed, both as to Bid Package 7 and Bid Package 20."

**ANSWER:**   Cupples admits only that the quoted language in paragraph 34 is contained in the Final Award, but denies the allegations to the extent they are inconsistent with the Final Award.

4927-8268-9936, v. 2

35. In addition, the Panel found that "Cupples materially breached the Knutson/Cupples Subcontract … as to its obligation to furnish IGUs that conformed and performed in accordance with the Project specifications".

**ANSWER:** Cupples admits only that the quoted language in paragraph 35 is contained in the Final Award, but denies the allegations to the extent they are inconsistent with the Final Award.

36. As to damages, the Panel awarded the Claimant $49,462,962.

**ANSWER:** Cupples admits the allegations in paragraph 36.

37. The breakdown of the damages, as set out in the Final Award, is as follows:

| | Incurred | Will be Incurred | Balance of Design Contracts | TOTAL |
|---|---|---|---|---|
| Window Replacement | $16,406.524 | $23,085,717 | $139,729 | $39,631.970 |
| Window Replacement Contingency | | | | |
| Film and Clips | $1,922.468 | | | $1,922,468 |
| Temporary Window Replacements | $610,381 | | | $610,381 |
| Slot Window Replacement | | $7,298,143 | | $7,298,143 |
| SGH Expert Consulting Fees | | | | |
| **TOTAL** | $18,939,373 | $30,383,860 | $139,729 | $49,462,962 |

**ANSWER:** Cupples admits only that the Final Award included the breakdown of damages set forth in in paragraph 37, but denies the allegations to the extent they are inconsistent with the Final Award.

38. The amount of the Final Award – $49,462,962 – was awarded in connection with the IGUs at issue in Bid Package #7 and Bid Package #20.

10

4927-8268-9936, v. 2

**ANSWER:** Cupples admits that the Final Award was in connection with the IGUs at issue in Bid Package #7 and Bid Package #20, but denies that all such damages included in the Final Award were to replace the IGUs.

39. Of that amount, $44,640,729 represents the damages for breach of contract with respect to Bid Package #7.

**ANSWER:** Cupples admits that the Final Award included $44,640,729 in connection with the IGUs at issue in Bid Package #7, but denies that all such damages were to replace the IGUs.

40. The remaining $4,822,233 is for breach of Bid Package #20, and specifically for Cupples' indemnity obligation under that contract, which ultimately was assigned to the Claimant by Knutson.

**ANSWER:** Cupples admits the allegations in paragraph 40.

### COVERAGE CORRESPONDENCE

41. Cupples tendered the arbitration to Starr under its excess policies.

**ANSWER:** Cupples admits the allegations in paragraph 41.

42. Starr issued a reservation of rights with respect to the Arbitration.

**ANSWER:** Cupples admits the allegations in paragraph 42.

43. Following the entry of the Award, and the Panel's findings of liability, Starr issued supplemental correspondence, disclaiming coverage for the Final Award.

**ANSWER:** Cupples admits the allegations in paragraph 43.

### STARR EXCESS POLICIES

44. Starr issued Commercial Excess Liability Policy Nos. 1000023617, 1000585054181, 1000585054191 and 1000585054201 to CH Holdings USA, Inc. in effect for

11

consecutive annual periods from April 9, 2017 to April 9, 2021 (collectively, the "Starr Excess Policies"). The Starr Excess Policies are attached as Exhibit B.

**ANSWER:**    Cupples admits the allegations in paragraph 44.

45.    The Starr Excess Policies have limits of $10 million each occurrence and in the aggregate.

**ANSWER:**    Cupples admits the allegations in paragraph 45.

46.    The insuring agreement to the Starr Excess Policies provides:

**SECTION I. COVERAGE**

**I.    COVERAGE**

A.    We will pay on behalf of the insured, the "Ultimate Net Loss" in excess of the "Underlying Insurance" as shown in ITEM 5. Of the Declarations, that the Insured becomes legally obligated to pay for loss or damage to which this insurance applies and that takes place in the Coverage Territory. Except for the terms, definitions, conditions and exclusions of this Policy, the coverage provided by this Policy shall follow the terms, identifications, conditions and exclusion of the applicable First Underlying Insurance Policy(ies) shown in ITEM 5.1. of the Declarations.

B.    Regardless of any other warranties, terms, conditions, exclusions or limitations of this Policy, if any applicable Underlying Insurance Policy(ies) does not cover "Ultimate Net Loss" for reasons other than exhaustion of its limit of liability by payment of claims or suits, then this Policy will not cover such "Ultimate Net Loss."

C.    The amount we will pay for the "Ultimate Net Loss" is limited as described in SECTION II. LIMITS OF INSURANCE.

**ANSWER:**    Cupples admits that this quoted language is contained in the Insuring Agreement of the Starr Excess Policies.

47.    The term "Underlying Insurance" is defined in Item 5 and references the Schedule of Underlying Policies which in turn identifies commercial general liability police issued by Travelers Property Casualty Company of America ("Travelers") and Endurance American Insurance Company ("Endurance").

**ANSWER:**   Cupples admits the allegations in paragraph 47.

## ENDURANCE EXCESS POLICIES

48.   Endurance issued Commercial Excess Liability Policy Nos. EXC30000087091, EXC30000087902, EXC30000087903 and EXC 30000087904 to CH Holdings USA, Inc. in effect for consecutive annual periods from April 9, 2017 to April 9, 2021 (collectively, the "Endurance Excess Policies"). The Endurance Excess Policies are attached as Exhibit C.

**ANSWER:**   Cupples admits the allegations in paragraph 48, but denies that Endurance issued Policy No. EXC30000087091, as the correct number is EXC30000087901.

49.   The Endurance Excess Policies have limits of $5 million each occurrence and in the aggregate.

**ANSWER:**   Cupples admits the allegations in paragraph 49.

50.   The insuring agreement to the Endurance Excess Policies provides:

INSURING AGREEMENTS

I.   COVERAGE

We will pay on behalf of the insured the amount of "loss" covered by this insurance in excess of the "underlying limits of insurance" subject to the LIMITS OF INSURANCE Section. This policy will follow form to the terms, conditions, definitions, and exclusions of the "first underlying insurance" in effect the first day of the Policy Period, except to the extent that the terms, conditions, definitions, and exclusions of this policy differ from the "first underlying insurance." In no event shall this policy provide broader coverage than is provided by any policy in the "underlying insurance" shown in Item 5. of the Declarations, except if specifically provided otherwise by endorsement.

The term "first underlying insurance" is defined as the controlling policy listed in Item 5. Item 5 references the Schedule of Underlying Policies, which in turn identifies commercial general liability policies issued by Travelers.

13

**ANSWER:**    Cupples admits only that the policies include the partially quoted insuring agreement language, as well as including the subsequently referenced terms, but denies that paragraph 50 fully quotes the insuring agreement and referenced terms.

## TRAVELERS POLICIES

51.    Travelers issued Commercial General Liability Policy Nos. VTC2J-CO-131J8067-TIL-17, Policy No. VTC2J-CO-131J8067-TIL-18, Policy No. VTC2J-CO-131J8067-TIL19 and Policy No. VTC2J-CO-131J8067-TIL-20 to CH Holdings USA, Inc. for consecutive annual periods in effect from April 9, 2017 to April 9, 2021 ("Travelers Policies"). The Travelers Policies are attached as Exhibit D.

**ANSWER:**    Cupples admits the allegations in paragraph 51.

52.    The Travelers Policies identify Cupples International Inc. as a named insured.

**ANSWER:**    Cupples admits the allegations in paragraph 52.

53.    The Travelers Policies each have limits of $2,000,000 each occurrence and $4,000,000 in the products-completed operations aggregate limit of liability.

**ANSWER:**    Cupples admits the allegations in paragraph 53.

54.    The Insuring Agreement to the Travelers Policies provides in pertinent part as follows:

**1.    Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion,

14

4927-8268-9936, v. 2

investigate any "occurrence" and settle any claim or "suit" that may result.[1]

\* \* \*

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

(3)    Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\* \* \*

**ANSWER:**    Cupples admits only that the language quoted in paragraph 54 is contained in the insuring agreement of the Travelers policies, but denies that paragraph 54 fully quotes the insuring agreement and all remaining allegations in paragraph 54.

55.    The Travelers Policies contain the following definitions:

**SECTION V – DEFINITIONS**

\* \* \*

---

[1] As set forth in the New York Changes Commercial General Liability Coverage Form Endorsement (CF F2 63 08 11).

15

**13.**[2]  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[3]

\* \* \*

**17.**  "Property damage" means:

**a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

**21.**  "Your product";

**a.**  Means:

**(1)**  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)**  You;

**(b)**  Others trading under your name; or

**(c)**  A person or organization whose business or assets you have acquired; and

**(2)**  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.**  Includes:

**(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

---

[2] The Travelers Policy in effect from April 9, 2019 to April 9, 2020 contains the same definition language, but the numbered paragraphs differ; the "occurrence" definition is 17., "property damage" is 23., "your product" is 30., and "your work" is 31.
[3] As set forth in the AMENDMENT OF OCCURRENCE DEFINITION FOR RESULTING PROPERTY DAMAGE CAUSE BY SUBCONTRACTED WORK Endorsement (Form CGT8 09).

4927-8268-9936, v. 2

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work";

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

**ANSWER:** Cupples admits only that the language quoted in paragraph 55 is contained in the definitions of the Travelers policies, but denies that paragraph 55 fully quotes the definitions or sets out all relevant definitions.

56. The Travelers Policies are subject to the following exclusions:

**2. Exclusions**
This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

17

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*    \*    \*

**j.** **Damage to Property**

"Property damage" to:

\*    \*    \*

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

18

4927-8268-9936, v. 2

\*    \*    \*

**k.**      **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.**      **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\*    \*    \*

**ANSWER:**    Cupples admits only that the language quoted in paragraph 56 is contained in the Travelers policies, but denies that paragraph 56 fully quotes the exclusions and denies that any of the exclusions apply to the Final Award.

57.    The Travelers Policies are also subject to the following Endorsements:

**EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

1.    This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

    **a.**      Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

19

4927-8268-9936, v. 2

    **b.**    Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2.    Subject to Paragraph 3. Below, professional services include:

    **a.**    Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

    **b.**    Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3.    Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

\*   \*   \*

**EXCLUSION – ARCHITECTURAL, ENGINEERING OR SURVEYING PROFESSIONAL SERVICES**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY PART

**PROVISIONS**

1.    The following exclusion is added to Paragraph 2., Exclusions, of SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

**Architectural, Engineering Or Surveying Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render any "professional services" by or on behalf of any insured, but only with respect to any of the following operations:

    a.    Providing, or hiring independent professionals to provide, architectural, engineering or surveying services to others in any insured's capacity as an architect, engineer or surveyor; or

    b.    Providing, or hiring independent professionals to provide, architectural, engineering or surveying services in connection with construction work any insured performs.

20

* * *

3.      The following is added to the **DEFINITIONS** Section:

"Professional services":

a.      Includes:

(1)      Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders or change orders, or preparing, approving, or failing to prepare or approve, drawings and specifications; and

(2)      Supervisory or inspection activities performed as part of any related architectural, or engineering or surveying activities.

b.      Does not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

* * *

**ANSWER:**    Because the endorsements quoted in this paragraph were not attached to some of the Travelers Policies in Exhibit B, Cupples lack knowledge or information sufficient to form a belief as to the truth or falsity of the following allegations and therefore denies them: Commercial General Liability Policy Nos. VTC2J-CO-131J8067-TIL-18 contains the two endorsements quoted in this paragraph and Commercial General Liability Policy No VTC2J-CO-131J8067-TIL-20 contains the Professional Liability Endorsement quoted in this paragraph. Cupples admits only that the language quoted in paragraph 57 is contained in certain endorsements to the remaining Travelers policies, but denies that paragraph 57 fully quotes the provisions and denies that any of the exclusions apply to the Final Award.

58.      The Travelers Policies contain the following amendment to the Limits of Liability:

21

**AMENDMENT – NON CUMULATION OF EACH OCCURRENCE LIMIT OF LIABILITY and NON CUMULATION OF PERSONAL and ADVERTISING INJURY LIMIT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.      Paragraph 5 of SECTION III – LIMITS OF INSURANCE, is amended to include the following:

Non cumulation of Each Occurrence Limit - If one "occurrence" causes "bodily injury" and/or "property damage during the policy period and during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. The policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence."

\*      \*      \*

**ANSWER:**    Cupples admits only that the language quoted in paragraph 58 is contained in the Travelers policies, but denies that paragraph 58 fully quotes the provisions and denies the provisions apply to the Final Award.

## COUNT I – DECLARATORY JUDGMENT
### (Insuring Agreement)

59.     Starr repeats and reiterates each and every allegation contained in the foregoing Paragraphs above as though fully set forth herein.

**ANSWER:**    Cupples incorporates its answers to the foregoing paragraphs as if fully set forth herein.

60.     The Starr Excess Policies follow form to the Travelers Policies and the Endurance Policies. The Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies apply, in pertinent part to sums the Insured becomes legally obligated to pay for damages because of "property damage" caused by an "occurrence" that occurs during the policy period.

22

**ANSWER:**    The allegations in paragraph 60 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples admits that the Starr Excess Policies follow form to the Travelers Policies and the Endurance Policies and that the Travelers Policies and the Endurance Policies provide coverage for, among other things, those sums that Cupples became legally obligated to pay as damages because of property damage caused by an occurrence during the policy period, but denies the remaining allegations in paragraph 60.

61.    No part of the Final Award is for damages Cupples is legally obligated to pay because of "property damage" caused by an "occurrence."

**ANSWER:**    The allegations in paragraph 61 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

62.    The Final Award issued by the Panel is for the cost to replace the IGUs that Cupples was retained to install, including the film, clips and other interim repairs.

**ANSWER:**    The allegations in paragraph 62 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

63.    The Claimant explicitly stated, and the Final Award noted, that the Claimant was not seeking consequential damages.

**ANSWER:**    Cupples denies the allegations in paragraph 63 to the extent they are inconsistent with the terms of the Final Award but admits that the Claimant stated it was not seeking consequential damages in the Arbitration.

64.    Therefore, the Final Award does not seek damages because of "property damage".

**ANSWER:**    The allegations in paragraph 64 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

23

65.     The only theory of recovery asserted in the Arbitration, and the basis for the Final Award, is breach of contract; namely, the windows designed, fabricated and installed by Cupples have failed and, accordingly, Cupples has materially breached its contracts.

**ANSWER:**    The allegations in paragraph 65 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples admits that the Final Award was based on a breach of contract and that the arbitrators found that the IGUs failed, but denies the remaining allegations.

66.     The damages for such breach, as noted above, is "[the] appropriate breach of contract remedy: cost of replacement of the defective construction product."

**ANSWER:**    The allegations in paragraph 66 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples admits that the partially quoted language is contained in the Final Award but denies the remaining allegations.

67.     Replacement of the effective construction product does not constitute "property damage" caused by an "occurrence," and thus the Final Award does not seek damages because of "property damage" caused by an "occurrence."

**ANSWER:**    The allegations in paragraph 67 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

68.     Starr is therefore entitled to a declaration that it has no obligation to indemnify Cupples for the Final Award under the Starr Excess Policies, as it does not fall within the insuring agreement of the Travelers Policies, the Endurance Excess Policies and the Starr Excess Policies.

**ANSWER:**    The allegations in paragraph 68 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

24

4927-8268-9936, v. 2

## COUNT II – DECLARATORY JUDGMENT
### (Exclusions)

69.    Starr repeats and reiterates each and every allegation contained in the foregoing Paragraphs above as though fully set forth herein.

**ANSWER:**    Cupples incorporates its answers to the foregoing paragraphs as if fully set forth herein.

70.    The Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies are subject to various exclusions that also apply to exclude coverage, even assuming the Final Award is for sums the Insured becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence."

**ANSWER:**    The allegations in paragraph 70 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

71.    The Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies are subject to exclusion a., which excludes coverage for "property damage" expected or intended from the standpoint of the insured.

**ANSWER:**    The allegations in paragraph 71 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples admits that the Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies contain an exclusion a., but denies that such exclusion is applicable.

72.    Because the Final Award is for damages caused by Cupples' breach of contract and damage to the IGUs that was evident during the course of construction, this exclusion operates to preclude coverage.

**ANSWER:**    The allegations in paragraph 72 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

25

73.     The Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies are also subject to a contractual liability exclusion that, as set forth above, precludes coverage for damages assumed in a contract or agreement.

**ANSWER:**   The allegations in paragraph 73 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples admits that these policies contain an exclusion that purports to exclude coverage for damages by reason of the assumption of liability in a contract or agreement, but denies the remaining allegations and denies the allegations to the extent they are inconsistent with the terms of these policies.

74.     The $4,822,233 that Cupples assumed in its subcontract with Knutson pursuant to an indemnity obligation and is excluded by the foregoing exclusion.

**ANSWER:**   The allegations in paragraph 74 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

75.     In addition, the remaining $44,640,729 was awarded for Cupples' breach of Bid Package #7 and represents the breach of contract remedy: "The Board seeks an appropriate breach of contract remedy; cost of replacement of the defective construction product."

**ANSWER:**   The allegations in paragraph 75 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

76.     Both amounts are thus excluded under the Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies under the contractual liability exclusion.

**ANSWER:**   The allegations in paragraph 76 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

4927-8268-9936, v. 2

77.   The Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies also exclude coverage for damage to property sustained in the ongoing operations of the insured under exclusions j.(5) and j.(6).

**ANSWER:**   The allegations in paragraph 77 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples admits that the Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies contain exclusions j.(5) and j.(6), but denies the remaining allegations in paragraph 77.

78.   To the extent that the Final Award is for amounts incurred for damage sustained prior to the Project's completion in 2017, such damages are excluded under the Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies.

**ANSWER:**   The allegations in paragraph 78 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

79.   Under exclusion k., "property damage" to "your product", further defined as any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by you, including warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product," is excluded under the Travelers Policies, the Endurance Excess Policies and the Starr Excess Policies.

**ANSWER:**   The allegations in paragraph 79 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples admits that these policies contain exclusion k, but denies the allegations to the extent they are inconsistent with the terms of the Travelers Policies and denies that said exclusion applies..

80.   Under exclusion l., the Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies also preclude coverage for "property damage" to "your work" arising out of

27

4927-8268-9936, v. 2

it or any part of it. The term "your work" is defined as work or operations performed by you or on your behalf and materials, parts or equipment furnished in connection with such work or operations, including warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work".

**ANSWER:**    The allegations in paragraph 80 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples admits that the Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies contain exclusion l, but denies that such exclusion applies to the Final Award.

81.    The Final Award awards damages for the cost to replace the IGUs, which constitutes Cupples product and work, and thus falls within the definitions of "your work" and "your product" in the Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies.

**ANSWER:**    The allegations in paragraph 81 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

82.    Therefore, damages awarded in the Final Award are excluded under the "your product" and "your work" exclusions in the Travelers Policies, the Endurance Excess Policies and the Starr Excess Policies.

**ANSWER:**    The allegations in paragraph 82 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

83.    The Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies also exclude coverage for "property damage" to "impaired property" or property that has not been physically injured, arising out of: a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or failure by you or anyone acting on your behalf to perform a

28

contract or agreement unless the loss of use arises out of sudden and accidental physical injury to "your product" or "your work".

**ANSWER:**    Cupples denies the allegations to the extent they are inconsistent with the terms of the Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies and denies that such exclusion applies.

84.    The Final Award only includes amounts for the cost of IGU replacement; it does not include any amounts for the lost use of "impaired property", such as the Project or playground.

**ANSWER:**    The allegations in paragraph 84 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

85.    To the extent such amounts were at issue, or the award is characterized as loss of use of impaired property, the impaired property exclusion precludes coverage, and there is no coverage under the Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies.

**ANSWER:**    The allegations in paragraph 85 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

86.    The Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies are subject to various professional services exclusions.

**ANSWER:**    The allegations in paragraph 86 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations to the extent they are inconsistent with the terms of the Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies and denies that the referenced professional services exclusions are applicable.

4927-8268-9936, v. 2

87.     In the Final Award, while the panel concludes that there was "misfabrication" of the IGUs, it also found that Cupples breached its design assist obligations as set forth in Bid Packages #7 and #20.

**ANSWER:**    The allegations in paragraph 87 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

88.     The professional services exclusions set forth in The Travelers Policies, the Endurance Excess Policies, and the Starr Excess Policies therefore exclude coverage for the Final Award and Starr is entitled to a declaration that it has no obligation under the Starr Excess Policies to indemnify Cupples.

**ANSWER:**    The allegations in paragraph 88 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

89.     The Starr Excess Policies contain Continuing and Progressive Injury or Damage Exclusion endorsements. These endorsements provide:

> In the event of continuing or progressively deteriorating damage, such damage shall be deemed to occur only when such damage commences. If the damage occurs during the Policy Period, our Limits of Insurance in effect at the time of such commencement shall be only the limits that apply.

**ANSWER:**    Cupples denies the allegations in Starr's second paragraph 89 to the extent they are inconsistent with the terms of the policies and denies that such endorsements apply to the Final Award.

90.     The Final Award notes that the damage to the IGUs was progressive and delamination was observed during the course of the construction (and prior to the inception of the Starr Excess Policies). The issues with the glass began before the inception of the Starr policy periods and therefore there is no coverage under the Starr Excess Policies.

30

**ANSWER:**   The allegations in paragraph 90 consist of legal conclusions for which no response is required.  To the extent a response is required, Cupples denies the allegations.

91.   To the extent not expressly admitted, Cupples denies each and every allegation set forth above and further denies all of the allegations contained in Starr's prayer for relief and specifically denies that Starr is entitled to any relief in this action.

## AFFIRMATIVE DEFENSES

The assertion of each and every affirmative defense stated herein shall not be construed as an admission by Cupples, nor is Cupples agreeing or conceding the burden of proof or burden of persuasion for any affirmative defense. Cupples reserves the right to assert additional defenses to the Complaint that may be appropriate following further investigations, discovery, or other developments.

### FIRST DEFENSE
**(Failure to State a Claim)**

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

### SECOND DEFENSE
**(Waiver)**

The claims in the Complaint are barred, in whole or in part, by the doctrine of waiver.

### THIRD DEFENSE
**(Estoppel)**

Starr is estopped from enforcing the claims and obligations, if any, sought to be enforced in its Complaint and each count therein because Starr's own conduct, actions, and/or omissions induced reliance by Cupples to its detriment, which conduct, actions, and/or omissions amount to and constitute an estoppel of any claims and any relief sought thereby.

4927-8268-9936, v. 2

## **FOURTH DEFENSE**
### **(Unclean Hands)**

Starr is barred, in whole or in part, from recovering under its Complaint based on the doctrine of unclean hands by reason of Starr's conduct involving bad faith, unconscionability, and deceit to the detriment of Cupples relating to the coverage at issue in this case.

## **FIFTH DEFENSE**
### **(Breach or Non-Performance)**

Starr is barred, in whole or in part, from recovering under its Complaint and each count therein because it breached the terms of its Policies on which its Complaint is based and/or failed to comply with the law by failing to perform timely, fully, and adequately the terms and conditions therein, thereby discharging any obligations on the part of Cupples.

WHEREFORE, Cupples requests that the Court deny all relief requested by Starr, dismiss the Complaint with prejudice, and award Cupples its reasonable attorneys' fees, costs, expenses, disbursements, interest on those amounts, and all other relief that is allowed by law or otherwise just, appropriate, necessary or proper.

## COUNTERCLAIM

Counter-Plaintiff Cupples International, Inc. ("Cupples"), by its attorneys, and for its Counterclaim against Starr Indemnity & Liability Company ("Starr"), states and alleges as follows:

## NATURE OF THE ACTION

1.      In this insurance-coverage action, Cupples seeks to recover damages caused by Starr's breach of its obligation to indemnify Cupples for a Final Award issued in the arbitration captioned *The Board of Regents, State of Iowa, on behalf of the University of Iowa v. Cupples International, Inc. et al.*, Case No. 01-22-0003-9453 ("Arbitration").

## THE PARTIES

2.      Cupples is a Missouri corporation with its principal place of business in Missouri.

3.      Upon information and belief, Starr is a corporation organized and existing under the laws of the State of Texas with its principal place of business in New York.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1367 because Cupples asserts a compulsory counterclaim and pursuant to 28 U.S.C. §1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because, on information and belief, a substantial part of the events giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

### A.      Starr's Insurance Coverage

6.      Starr issued a series of Commercial Excess Liability Policies to CH Holdings USA, Inc. for the consecutive annual policy periods from April 9, 2017 to April 9, 2021 (collectively,

the "Starr Excess Policies"). The Starr Excess Policies are attached to Starr's Complaint as Exhibit B and are incorporated herein.

7.    The Starr Excess Policies generally follow form to the excess policies issued to CH Holdings USA, Inc. by Endurance American Insurance Company (collectively, the "Endurance Excess Policies"). The Endurance Excess Policies are attached to Starr's Complaint as Exhibit C and are incorporated herein.

8.    The Endurance Excess Policies generally follow form to the primary policies issued to CH Holdings USA, Inc. by Travelers Property Casualty Company of America (collectively, the "Travelers Policies"). The Travelers Policies are attached to Starr's Complaint as Exhibit D and incorporated herein.

**B.    The Arbitration and Final Award**

9.    The University of Iowa Stead Family Children's Hospital is a fourteen-story building located in Iowa City, Iowa and operated by the Board of Regents, State of Iowa on behalf of the University of Iowa (the "Board"). In 2017, construction of the hospital was completed for approximately $400 million (the "Project").

10.    The Project included a "curtainwall system" in which wall panels, glass and other materials are used for exterior cladding of the building. The curtainwall system provides a thermal barrier, resists air and water infiltration, and was designed by the curtainwall supplier to accommodate deflections, thermal expansion and contraction, building sway, and relative movements caused by loads acting on the structure. The Project's curtainwall system included IGUs.

11.    The Board contracted with Cupples and Knutson for curtainwall system work. On April 11, 2013, the Board and Cupples entered into a contract for Bid Package #7 for the exterior construction of hospital portion of the Project.

12.     On March 5, 2014, the Board and Knutson entered into a contract for Bid Package #20 for the connector bridge.  For the Bid Package #20, Knutson subcontracted with Cupples for the  bridge curtainwall.

13.     Cupples subcontracted with Cristacurva under both Bid Package #7 and Bid Package #20.

14.     On August 4, 2021, the University of Iowa Hospital and Clinics ("UICH") notified Cupples that it discovered water dripping through the ceiling of a waiting room.  According to UICH, it appeared that water leaked through the exterior cladding and infiltrated the ceiling through cracks in the cement decking.  UICH noted that it intended to hold Cupples responsible for damages.

15.     Experts also concluded that the water accumulation was extensive, with apparent water damage into the walls.  Significant amounts of water had infiltrated the curtainwall system provided by Cupples and had been sealed and trapped inside the exterior façade of the building.  According to experts, water trapped inside and behind a curtainwall system has the potential to damage other components of the building system, including corrosion of metals and water damage to organic materials.  Given the amount of water that the experts observed pouring out from inside and behind the curtainwall system, the experts expected there to be water damage to other building components due to the water trapped inside.

16.     UICH also notified Cupples that broken glass was found to have fallen from the fifth floor of the building into the outside courtyard, and as a result, UICH spent substantial amounts for stabilization efforts to avoid risks of serious injury.

17.     In September 2022, the Board commenced an arbitration proceeding (the "Arbitration") against Cupples and Knutson Construction Services Midwest, Inc. ("Knutson").

35

Cristacurva, LLC ("Cristacurva") was added as a party by way of direct claims by the UICH, Knutson, and Cupples.  A copy of UICH's Detailed Statement of Claim is attached to the Starr Complaint as Exhibit A and incorporated herein.

18.    In the Arbitration, the Board sought to recover damages due to, among other things, alleged failures of the Insulated Glass Units ("IGUs") at the Project.

19.    On July 3, 2025, following extensive hearings and testimony, the arbitrators entered a Final Award in favor of the Board and against Cupples in the amount of $49,462,962.

20.    The arbitrators, having considered and weighed the expert testimony and reports, found that the cause of the delamination and resulting failure of the IGUs was due to, among other things, misfabrication of the glass in the IGUs by Cristacurva and that due to loss of use(e.g., dangers presented to occupants inside and outside of the building from falling glass) that all windows had to be removed and replaced.

**C.    Starr's Refusal to Provide Coverage for the Final Award**

21.    Cupples tendered the Arbitration to Starr under the Starr Excess Policies.

22.    Starr issued a reservation of rights with respect to the Arbitration.

23.    On or about September 24, 2025, Starr disclaimed coverage for the Final Award.

**COUNT ONE**
**(Breach of Contract)**

24.    Cupples repeats and reiterates each and every allegation contained in the foregoing Paragraphs above as though fully set forth herein.

25.    The Starr Excess Policies are valid and enforceable contracts.

26.    Starr has a duty to indemnify Cupples for the Final Award.

27.    Cupples performed all obligations under the Starr Excess Policies that were not otherwise excused by Starr's conduct.

36

4927-8268-9936, v. 2

28.     Starr breached its obligations under the Starr Excess Policies by repudiating and denying Starr's duty to indemnify Cupples for the Final Award.

29.     As a direct and proximate result of Starr's breach of its contractually-owed duty to indemnify Cupples in connection with the Final Award, Cupples has been damaged in excess of $75,000 exclusive of interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Cupples requests judgment in its favor and against Starr, providing Cupples with the following:

A.     An award of compensatory damages resulting from Starr's breach of its duty to indemnify Cupples for the Final Award;

B.     All damages allowed by law, including all consequential damages flowing from Starr's breach of its contractually-owed duty and applicable law;

C.     All interest on the above-described amounts allowed by law, including prejudgment interest;

D.     All attorney's fees, costs, and expenses allowed by law; and

E.     Such other and further relief as the Court deems necessary, just, or proper.

## DEMAND FOR JURY TRIAL

Cupples demands a trial by jury on all issues so triable.

Dated: February 16, 2026

WEINHARDT & LANTZ, P.C.

By: /s/ Kyle J. Essley

Kyle J. Essley              AT0015054
Jason R. Smith             AT0014862
2600 Grand Avenue, Suite 450
Des Moines, IA  50312
Telephone: (515) 244-3100
E-mail:  kessley@weinhardtlantz.com
             jsmith@weinhardtlantz.com

4927-8268-9936, v. 2

BLANK ROME LLP

Rikke Dierssen-Morice, *pro hac vice*
Jason A. Frye. *pro hac vice*
444 West Lake Street, Suite 1650
Chicago, Illinois 60606
Telephone: (312) 776-2524
Facsimile: (312) 776-2601
rikke.morice@blankrome.com
jason.frye@blankrome.com

ATTORNEYS FOR DEFENDANT
CUPPLES INTERNATIONAL, INC.

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys of record on February 16, 2026 by CM/ECF.

Signature:   /s/ Maura McNally-Cavanagh