| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, | CIVIL FILE NO. 3:25-cv-00106-SHL-WPK |
| Plaintiff, | |
| v. | |
| CUPPLES INTERNATIONAL, INC. | **STARR INDEMNITY & LIABILITY COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO CUPPLES INTERNATIONAL, INC.'S COUNTERCLAIM** |
| Defendant, | |
| THE BOARD OF REGENTS, STATE OF IOWA, on behalf of the UNIVERSITY OF IOWA, | |
| Nominal Defendant. | |

Plaintiff and Counterclaim Defendant, Starr Indemnity & Liability Company ("Starr"), through undersigned counsel, for its answer and affirmative defenses to the Counterclaim against it by Defendant and Counterclaim Plaintiff, Cupples International, Inc. ("Cupples"), states as follows:

## ANSWER TO COUNTERCLAIM

### NATURE OF THE ACTION

1. In this insurance-coverage action, Cupples seeks to recover damages caused by Starr's breach of its obligation to indemnify Cupples for a Final Award issued in the arbitration captioned The Board of Regents, State of Iowa, on behalf of the University of Iowa v. Cupples International, Inc. et al., Case No. 01-22-0003-9453 ("Arbitration").

**ANSWER**: The allegations in Paragraph 1 consist of legal conclusions to which no answer is required. To the extent an answer is required, Starr admits Cupples seeks to recover

damages through its counterclaim, but denies that Starr breached any obligation to indemnify Cupples.

**THE PARTIES**

2.     Cupples is a Missouri corporation with its principal place of business in Missouri.

**ANSWER**:     Starr admits the allegations in Paragraph 2.

3.     Upon information and belief, Starr is a corporation organized and existing under the laws of the State of Texas with its principal place of business in New York.

**ANSWER**:     Starr admits the allegations in Paragraph 3.

**JURISDICTION AND VENUE**

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1367 because Cupples asserts a compulsory counterclaim and pursuant to 28 U.S.C. §1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER**:     Starr admits the allegations in Paragraph 4.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because, on information and belief, a substantial part of the events giving rise to the claim occurred in this district.

**ANSWER**:     Starr admits the allegations in Paragraph 5.

**FACTUAL BACKGROUND**

**A. Starr's Insurance Coverage.**

6.     Starr issued a series of Commercial Excess Liability Policies to CH Holdings USA, Inc. for the consecutive annual policy periods from April 9, 2017 to April 9, 2021 (collectively, the "Starr Excess Policies"). The Starr Excess Policies are attached to Starr's Complaint as Exhibit B and are incorporated herein.

**ANSWER**: Starr admits the allegations in Paragraph 6.

7. The Starr Excess Policies generally follow form to the excess policies issued to CH Holdings USA, Inc. by Endurance American Insurance Company (collectively, the "Endurance Excess Policies"). The Endurance Excess Policies are attached to Starr's Complaint as Exhibit C and are incorporated herein.

**ANSWER**: Starr admits that the Starr Excess Policies generally, but not wholly, follow form to the excess policies issued by Endurance. Starr further states that the policies at issue in this matter speak for themselves regarding any policy coverages, terms, and conditions, and denies any characterization to the contrary. Starr denies any other allegations in Paragraph 7.

8. The Endurance Excess Policies generally follow form to the primary policies issued to CH Holdings USA, Inc. by Travelers Property Casualty Company of America (collectively, the "Travelers Policies"). The Travelers Policies are attached to Starr's Complaint as Exhibit D and incorporated herein.

**ANSWER**: Starr states that the policies at issue in this matter speak for themselves regarding any policy coverages, terms, and conditions, and denies any characterization to the contrary. Starr denies any other allegations in Paragraph 8.

**B. The Arbitration and Final Award.**

9. The University of Iowa Stead Family Children's Hospital is a fourteen-story building located in Iowa City, Iowa and operated by the Board of Regents, State of Iowa on behalf of the University of Iowa (the "Board"). In 2017, construction of the hospital was completed for approximately $400 million (the "Project").

**ANSWER**: Starr lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 9 and therefore denies the allegations.

10.     The Project included a "curtainwall system" in which wall panels, glass and other materials are used for exterior cladding of the building. The curtainwall system provides a thermal barrier, resists air and water infiltration, and was designed by the curtainwall supplier to accommodate deflections, thermal expansion and contraction, building sway, and relative movements caused by loads acting on the structure. The Project's curtainwall system included IGUs.

**ANSWER**: Starr admits only that the Project included a curtainwall system, comprised of IGUs. Starr lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 10 and therefore denies the allegations.

11.     The Board contracted with Cupples and Knutson for curtainwall system work. On April 11, 2013, the Board and Cupples entered into a contract for Bid Package #7 for the exterior construction of hospital portion of the Project.

**ANSWER**: Starr admits only that the Board contracted with Cupples for Bid Package #7 and with Knutson for Bid Package #20. Starr lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 11 and therefore denies the allegations.

12.     On March 5, 2014, the Board and Knutson entered into a contract for Bid Package #20 for the connector bridge. For the Bid Package #20, Knutson subcontracted with Cupples for the bridge curtainwall.

**ANSWER**: Starr admits only that, for Bid Package #20, the Board contracted with Knutson, which in turn subcontracted with Cupples regarding the bridge curtainwall and windows scope of work. Starr lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 12 and therefore denies the allegations.

13.     Cupples subcontracted with Cristacurva under both Bid Package #7 and Bid Package #20.

**ANSWER**: Starr admits only, as alleged in its Complaint, that Cupples contracted with Cristacurva to fabricate and install the windows. Starr lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 13 and therefore denies the allegations.

14.     On August 4, 2021, the University of Iowa Hospital and Clinics ("UICH") notified Cupples that it discovered water dripping through the ceiling of a waiting room. According to UICH, it appeared that water leaked through the exterior cladding and infiltrated the ceiling through cracks in the cement decking. UICH noted that it intended to hold Cupples responsible for damages.

**ANSWER**: Starr lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14 and therefore denies the allegations.

15.     Experts also concluded that the water accumulation was extensive, with apparent water damage into the walls. Significant amounts of water had infiltrated the curtainwall system provided by Cupples and had been sealed and trapped inside the exterior façade of the building. According to experts, water trapped inside and behind a curtainwall system has the potential to damage other components of the building system, including corrosion of metals and water damage to organic materials. Given the amount of water that the experts observed pouring out from inside and behind the curtainwall system, the experts expected there to be water damage to other building components due to the water trapped inside.

**ANSWER**: Starr lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15 and therefore denies the allegations.

16. UICH also notified Cupples that broken glass was found to have fallen from the fifth floor of the building into the outside courtyard, and as a result, UICH spent substantial amounts for stabilization efforts to avoid risks of serious injury.

**ANSWER**: Starr lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16 and therefore denies the allegations.

17. In September 2022, the Board commenced an arbitration proceeding (the "Arbitration") against Cupples and Knutson Construction Services Midwest, Inc. ("Knutson"). Cristacurva, LLC ("Cristacurva") was added as a party by way of direct claims by the UICH, Knutson, and Cupples. A copy of UICH's Detailed Statement of Claim is attached to the Starr Complaint as Exhibit A and incorporated herein.

**ANSWER**: Starr admits only that the Arbitration was commenced in or around September 2022 and that the Statement of Claim is attached as Exhibit A to the Starr Complaint in this matter. Starr lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 17 and therefore denies the allegations.

18. In the Arbitration, the Board sought to recover damages due to, among other things, alleged failures of the Insulated Glass Units ("IGUs") at the Project.

**ANSWER**: Starr admits only the Board sought damages associated with the replacement of the IGUs, as alleged in the Complaint in this matter. Starr lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 18 and therefore denies the allegations.

19. On July 3, 2025, following extensive hearings and testimony, the arbitrators entered a Final Award in favor of the Board and against Cupples in the amount of $49,462,962.

**ANSWER**: Starr admits the allegations in Paragraph 19.

20. The arbitrators, having considered and weighed the expert testimony and reports, found that the cause of the delamination and resulting failure of the IGUs was due to, among other things, misfabrication of the glass in the IGUs by Cristacurva and that due to loss of use (*e.g.*, dangers presented to occupants inside and outside of the building from falling glass) that all windows had to be removed and replaced.

**ANSWER**: Starr states that the Final Award in the Arbitration speaks for itself and denies any characterization to the contrary. Starr lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 20 and therefore denies the allegations.

C. **Starr's Refusal to Provide Coverage for the Final Award.**

21. Cupples tendered the Arbitration to Starr under the Starr Excess Policies.

**ANSWER**: Starr admits the allegations in Paragraph 21.

22. Starr issued a reservation of rights with respect to the Arbitration.

**ANSWER**: Starr admits the allegations in Paragraph 22.

23. On or about September 24, 2025, Starr disclaimed coverage for the Final Award.

**ANSWER**: Starr admits the allegations in Paragraph 23.

**COUNT ONE (Breach of Contract)**

24. Cupples repeats and reiterates each and every allegation contained in the foregoing Paragraphs above as though fully set forth herein.

**ANSWER**: Starr repeats and reiterates each and every answer contained in the foregoing Paragraphs as though fully set forth herein.

25. The Starr Excess Policies are valid and enforceable contracts.

**ANSWER**: Starr admits the allegations in Paragraph 25.

26. Starr has a duty to indemnify Cupples for the Final Award.

**ANSWER**: Starr denies the allegations in Paragraph 26.

27. Cupples performed all obligations under the Starr Excess Policies that were not otherwise excused by Starr's conduct.

**ANSWER**: Starr states that the policies at issue in this matter speak for themselves regarding any policy coverages, terms, and conditions, and denies any characterization to the contrary. Starr denies any other allegations in Paragraph 27.

28. Starr breached its obligations under the Starr Excess Policies by repudiating and denying Starr's duty to indemnify Cupples for the Final Award.

**ANSWER**: Starr denies the allegations in Paragraph 28.

29. As a direct and proximate result of Starr's breach of its contractually-owed duty to indemnify Cupples in connection with the Final Award, Cupples has been damaged in excess of $75,000 exclusive of interest and costs.

**ANSWER**: Starr denies the allegations in Paragraph 29.

## PRAYER FOR RELIEF

WHEREFORE, Cupples requests judgment in its favor and against Starr, providing Cupples with the following:

A. An award of compensatory damages resulting from Starr's breach of its duty to indemnify Cupples for the Final Award;

B. All damages allowed by law, including all consequential damages flowing from Starr's breach of its contractually-owed duty and applicable law;

C. All interest on the above-described amounts allowed by law, including prejudgment interest;

8

D.  All attorney's fees, costs, and expenses allowed by law; and

E.  Such other and further relief as the Court deems necessary, just, or proper.

**ANSWER**: Starr denies that Cupples is entitled to the judgment and relief it seeks in the PRAYER FOR RELIEF of its Counterclaim.

**AFFIRMATIVE DEFENSES**

Starr may rely on any or all of the following affirmative defenses and avoidances with respect to Cupples' Counterclaim:

1.      The Counterclaim fails to state a claim upon which relief may be granted.

2.      Starr denies that it breached any insurance contract between it and Cupples, and further denies that Cupples is entitled to monetary or other relief at this juncture under any theory of recovery as set forth in the Counterclaim.

3.      Cupples' requested relief may be barred by its failure to meet any applicable burdens, its own breach of contract, and/or its failure to comply with terms, conditions, and provisions of any applicable insurance policy.

4.      Cupples' claims may be barred, in whole or in part, by payment, accord, satisfaction, release, waiver, and estoppel.

5.      Cupples' claims may be barred, precluded or limited by virtue of the provisions, exclusions, definitions, terms, conditions, and any other insurance provisions and limitations contained in any applicable insurance policy.

6.      Cupples' claim may be barred to the extent any Underlying Insurance has not been exhausted.

7.      Cupples' claim is barred to the extent it does not arise from "property damage" caused by an "occurrence."

8. Cupples' claim is barred to the extent it arises from damages assumed in a contract or agreement, as contemplated by the contractual liability policy exclusion.

9. Cupples' claim is barred to the extent any damages at issue in Arbitration or the Final Award, relating to the cost to replace the IGUs, fall within the "your work" and "your product" policy exclusions.

10. Cupples' claim is barred to the extent that any damages at issue in Arbitration or the Final Award fall within the "impaired property" policy exclusion.

11. Cupples' claim is barred to the extent any damages at issue in Arbitration or the Final Award arose from professional services, as contemplated by the professional services policy exclusions.

12. Cupples' claim is barred to the extent any damages at issue in Arbitration or the Final Award constitute damages which began before the inception of the Starr policy periods, as contemplated by the Starr Excess Policies' Continuing and Progressive Injury or Damage Exclusion Endorsements.

13. Cupples' claims may be barred, precluded or limited by virtue of the limits and sub-limits applicable to any coverages in any applicable insurance policy.

14. Cupples' claims may be barred to the extent it failed to mitigate, minimize, or avoid any of the loss or damage alleged in the Counterclaim, and any recovery against Starr must, therefore, be reduced by that amount.

15. Cupples' claims for damages may be barred or limited to the extent the alleged damages are too speculative to be ascertainable and thus are not recoverable.

16.     Cupples' claims for relief may be barred to the extent such relief, if granted, would produce a windfall recovery neither consistent with the principles of law and equity, nor the insurance policies at issue in this matter.

17.     Starr affirmatively alleges, but without relieving Plaintiff of its burden of proof in any respect, that the claims asserted are, or may be, barred by any of the affirmative defenses contemplated under the Federal Rules of Civil Procedure and any other applicable law. The applicability and extent of any such bar to recovery may not be fully ascertainable until there has been further discovery. Starr therefore reserves the right to assert additional affirmative defenses if and when warranted.

Dated: March 9, 2026

By:   s/*Laura J. Hanson*
Debra L. Weiss – AT0012474
Laura J. Hanson – Admitted Pro Hac Vice
Meagher & Geer, P.L.L.P.
33 South Sixth Street, Suite 4300
Minneapolis, MN  55402
(612) 338-0661
(612) 338-8384
dweiss@meagher.com
lhanson@meagher.com

***Attorneys for Plaintiff***